## Tower's Estate.

*Wills—Construction—Execution of power.*

If a testator who possesses a special power of appointment makes his will with express reference to it, a general gift of his own estate to the person who is the object of the power is a good execution thereof; and this is especially true where the only beneficiary mentioned is the sole object of the power.

Exceptions to adjudication. O. C. Phila. Co., July T., 1890, No. 199.

Charlemagne Tower died on July 24, 1889, leaving a will duly admitted to probate, in which, after creating certain trusts for the benefit of his children and grandchildren, he provided, *inter alia*, as follows: "I authorize and empower each one of my children or grandchildren who may leave a husband or wife surviving him or her, by his or her last will and testament, or any writing in the nature thereof by him or her signed, to make provision for any surviving husband or wife either of them may leave surviving, to continue during life, but not to exceed one-fourth of the income which would have been payable to such testator or appointer if he or she had remained living." His son, Charlemagne Tower, Jr., died Feb. 24, 1923, leaving a will, by which he exercised the above power in favor of his wife. The validity of the execution was called in question by remaindermen. The will and all facts necessary to an understanding of the case appear from the following extract from the adjudication of

Gest, J., Auditing Judge.—Charlemagne Tower, Jr., left issue. These are Charlemagne Tower, Zeoffrey Tower, Roderick Tower and Helen Susan Robertson, all of age. Helen Susan Robertson has issue one child, William Abbott Robertson, a minor, of whom John M. Scott is guardian *ad litem* to represent the interests of the minor as to the account, and Paul C. Wagner is guardian *ad litem* to represent the interests of the minor as to the claim of Helen Smith Tower to a share of the income. Roderick Tower has issue two children, Pamela Tower and Whitney Tower, minors, of whom John M. Scott and Paul C. Wagner are guardians *ad litem* for the purposes mentioned.

Deborah T. Janney has no issue.

Emma T. Reilly has one child, Ruth, wife of Comte de Borchgrave d'Altena. Her children, whose names are stated in the petition for distribution, are minors, represented by Edgar C. Felton as guardian *ad litem*.

Henrietta T. Wurts has no issue.

Grace T. Putnam has six children, all of age, whose names are stated in the petition for distribution, and the minor children of these children are represented by Edgar C. Felton as guardian *ad litem*.

All parties in interest appear to have received notice of the account and audit personally or through their guardian.

Charlemagne Tower, Jr., who died on Feb. 24, 1923, left a will, dated May 23, 1892, in words following:

"I, Charlemagne Tower, Junior, of the City of Philadelphia and State of Pennsylvania, do make, publish and declare this to be my Last Will and Testament as well in my own right as in the exercise of any and all powers me in that behalf enabling, and in particular in execution of all powers and interests reserved to me by the Will of my late Father, Charlemagne Tower, who died at Waterville, New York, on the Twenty-fourth day of July, A. D. 1889.

"First. I hereby revoke any and all Testamentary Writings by me at any time heretofore made.

"Second. I direct all my just debts and funeral expenses to be paid as soon as may he after my decease.

Tower's Estate.

"Third. I hereby devise and bequeath unto my wife, Helen Smith Tower, her heirs, executors, administrators and assigns, all the rest, residue and remainder of all my property whatsoever, Real, Personal and Mixed, and wheresoever situate, to be hers absolutely.

"Fourth. I appoint my said wife to be the executrix of this my Last Will and Testament without security being required of her."

Charlemagne Tower, Jr., executed a codicil to his will on Aug. 6, 1900, which, however, is immaterial to the present adjudication.

The question was presented to the court as to the further distribution of the one-fifth share of the income to which Charlemagne Tower, Jr., deceased, was entitled while living; that is, whether the will of Charlemagne Tower, Jr., was a valid exercise of his power of appointment in favor of his wife, Helen Smith Tower, to the extent of one-fourth of the income heretofore payable to him.

This is a special power exercisable only in favor of the wife of the donee, and is limited for her life and so as not to exceed one-quarter of the income to which the donee was entitled during his life.

The draftsman of the will of Charlemagne Tower, Jr., whoever he may have been, seems to have written it under the impression that a special power of appointment is well executed by a general devise of the donee's estate, which, of course, is not so. The Wills Act of June 7, 1917, § 11, P. L. 403, re-enacting the 3rd section of the Act of June 4, 1879, P. L. 88, which, in turn, was copied from the English Statute of 1 Vict., ch. 26, § 27, relates only to general powers, for, if Lloyd v. Fretz, 235 Pa. 538, be understood to lay down a different rule, it was inadvertent. The question will be decided entirely without regard to the statute.

Charlemagne Tower, Jr., however, in the preamble of his will, declares the same to be his will as well in his own right as in exercise of any and all powers him in that behalf enabling, and in particular in execution of all powers reserved to him by the will of his father, so that there can be no doubt that he intended to exercise the power. The question is, did he do it? For, without further mention of it, he proceeds, after a general revocation of all prior testamentary writings, to direct the payment of his debts and funeral expenses, which direction necessarily related only to his own estate (for he had no right to direct their payment from the trust estate of his deceased father), and then he devised to his wife "All the rest, residue and remainder of my estate whatsoever, Real, Personal and Mixed," and this again refers only to his own estate.

The question thus presented does not seem to have been decided in Pennsylvania, though Clermontel's Estate, 12 Phila. 139, was cited in behalf of Helen Smith Tower. In Clermontel's Estate, the donee had a general power of testamentary appointment under her father's will, and died on Aug. 21, 1876, before the Act of 1879, leaving a will, in which, as it appears from my examination of the original on file, she stated her intention in unmistakable terms to exercise the power of appointment given her by the will of her father, and her intention by her will to devise, bequeath, appoint and dispose of all her estate, real and personal, whether the same should stand in her own name or in the name of any other, in trust for her or subject to any power which she might lawfully execute, and for these purposes she did devise, direct, bequeath and appoint as follows, etc. She then directed and appointed that her debts and funeral expenses should be paid and gave and bequeathed all her estate to a trustee in trust to invest and pay the income as stated in the report of the case in 12 Phila. 139, where it was held that the

power of appointment was properly exercised. It will be observed that, although the power of appointment was general and not special, yet, as the case was prior to the Act of 1879, and, therefore, unaffected by it, it was necessary that the power of appointment should be referred to. In this respect the case is similar to the present, and it will also be noted that this donee directed that her debts be paid, but, as her power was general, she had a right to do so. It will be noticed, however, that the donee did actually, in the dispositive clause of her will, "devise, direct, bequeath and appoint," which differentiates the case from the present, this being the very point where the will of Charlemagne Tower, Jr., is defective. I cannot, therefore, hold that Clermontel's Estate is a ruling authority.

Many cases were cited in the argument, including those of the English courts. They are not all harmonious, and I do not consider it necessary to examine them in detail, inasmuch as they would not be controlling and their facts differ from those of the present case. Some will be referred to, however, which bear specially on the question presented.

It may be stated preliminarily as a general principle that this court will, whenever practicable, uphold the attempted exercise of a power (McNeile's Estate (No. 4), 15 Dist. R. 105; McNeile's Estate (No. 5), 15 Dist. R. 300), and in the present case the donee expressly referred to the power vested in him, so that his intention to exercise is apparent, the chief difficulties being the absence of any reference thereto in the dispositive clauses of his will, as above stated, and his direction to pay his own debts, which precedes the residuary gift.

As to the first point, I have concluded, after an examination of the authorities, that if a testator, who possesses a special power of appointment, makes his will with express reference to it, a general gift of his own estate to a person who is the object of the power should be considered a good execution of it, Farwell on Powers (2nd ed.), 189, 190; Bailey v. Lloyd, 5 Russell, 330; Davies v. Fisher, 5 Beavan, 201; Chance on Powers, 1649, and this is especially true where, as in this case, the only beneficiary mentioned is the sole object of the power.

The direction to pay the donee's debts and funeral expenses would, of course, indicate prima facie that the donee was not intending to execute the special power, because he would obviously have no right to discharge his own debts from the donor's estate. Considering it, however, as bearing on the question of intention, I do not think it sufficient to countervail the explicit reference to the power in the preamble of the will, which is an integral part of it and may properly be considered as annexed to and qualifying the entire will and every part of it. As Judge Penrose remarked in Van Syckel's Estate, 9 Dist. R. 367: "The will is to be construed accordingly reddendo singula singulis. What she (the donee) could not give under the power must be attributed to her unlimited authority as owner; and whatever was required in the proper exercise of her power of appointment must be regarded as done by virtue of it. The will expressly declares that it is intended to dispose of her own estate and the estate or estates subject to her powers. It is to be construed, therefore, in such manner as to make it efficient for both purposes rather than that it should be allowed to fail, in whole or in part, as to either: ut res magis valeat quam pereat."

The English cases on the point are not altogether consistent and are reviewed in Farwell (2nd ed.), 184. In Clogstoun v. Walcott, 13 Sim. 523 (1843), for example, Vice-Chancellor Shadwell held that a similar residuary gift, after the payment of debts, funeral expenses and certain legacies in trust for the

Tower's Estate.

objects of the power, was not an execution of it; but in that case the donee did not in her will refer specifically to the special power, but merely in the residuary gift "by virtue of every power enabling her in that behalf appointed," &c. This, with other facts, was noted in the later case of Teape's Trusts, 16 Eq. 442, and Theobald (7th ed.), 249, notes that Clogstoun v. Walcott is not to be followed. It would seem to me reasonable to hold that the donee meant that his debts should be paid from his own property and that the rest should pass to those who are the objects of the special power, Ferrier v. Jay, 10 Eq. 550, and this would appear to be the latest opinion of the English courts, even if the donee has no estate of his own: Re Mackenzie (1917), 2 Ch. 58.

It only remains to consider what effect, if any, should be given to the fact that the power of appointment was not only special, but limited, in that Charlemagne Tower, Jr., had the right to appoint in favor of his wife only for her life and only one-fourth of the income which would have been payable to him. I think, however, that the general residuary gift to the wife shows a clear intention to benefit her to the fullest extent of his power, and to give her the largest interest he could give in everything he had to dispose of, as was said by Lord Chancellor Selborne in Teape's Trusts, 16 Eq. 442; and see Re Ackerley (1913), 1 Ch. 510.

Upon the whole, I am of opinion that the will of Charlemagne Tower, Jr., properly exercised the special power of appointment vested in him by his father's will, and, consequently, his widow is entitled during her life to one-fourth of the income which would be payable to him if he survived; but as the question has not been expressly ruled in Pennsylvania and is not altogether free from doubt, and the rights of minors are involved, I direct Mr. Wagner, as guardian ad litem, to file exceptions to this adjudication in order that the court in banc may determine the case.

Paul C. Wagner, for exceptions.

Russell Duane (of Duane, Morris & Heckscher), contra.

VAN DUSEN, J., Nov. 28, 1924.—The intention of the appointor to exercise the power entrusted to him is so clear that none of the arguments of the exceptant even create a doubt of it. The objections to carrying out that intention which have been suggested have been so satisfactorily dealt with by the auditing judge that we can add nothing except to say that we all agree with him.

The exceptions are dismissed and the adjudication is confirmed absolutely.